**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mohammad TAVAKKOLY, aka Mohammad Amin, Defendant–Appellant.**

No. 99–10166.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 2000

Filed Feb. 5, 2001

Robert R. Riggs, Katzoff & Riggs, Cobb, California, for the defendant-appellant.

Robert S. Mueller, III, United States Attorney, and J. Douglas Wilson and Karen D. Beausey, Assistant United States Attorneys, San Francisco, California, for the plaintiff-appellee.

Before: KLEINFELD, HAWKINS and TALLMAN, Circuit Judges.

RICHARD C. TALLMAN, Circuit Judge:

Mohammad Tavakkoly was convicted of conspiracy to sell heroin and opium while on pretrial release in another federal drug case. The district court sentenced him to a prison term of 126 months—120 months for the drug offenses and six more for committing them while on pretrial release. Tavakkoly presses several claims of error in his trial and he challenges the district court's application of the Sentencing Guidelines. We affirm.

## I

A confidential informant identified Tavakkoly to Drug Enforcement Administration agents as the seller in a proposed heroin deal. Agents recorded several telephone calls in which Tavakkoly discussed the deal with the informant and videotaped Tavakkoly's conduct at a key meeting he attended with undercover agents posing as buyers.

On the basis of this evidence, the agents obtained a search warrant for Tavakkoly's house. When they executed the warrant, an agent stationed outside the home was nearly struck by a quantity of opium thrown from the bedroom window. Inside, the agents found a large quantity of opium stashed in Tavakkoly's toilet tank.

Tavakkoly was indicted on three felony counts: (1) conspiracy to possess with intent to distribute heroin; (2) distribution of heroin; and (3) possession with intent to distribute opium. A jury found him guilty on all three counts. The district court sentenced Tavakkoly to 126 months in prison followed by 96 months of supervised release.

## II

Tavakkoly argues that the district court erred by: (1) permitting the prosecutor to vouch for a witness's credibility; (2) failing to instruct the jury in the precise diction Tavakkoly requested; (3) allowing the jury to convict him of possession with intent to distribute opium without sufficient evidence; (4) enhancing his sentence because of his prior conviction; and (5) sentencing him to an additional, consecutive term for committing his crimes while on pretrial release. We address each of Tavakkoly's arguments in turn.

## A

Tavakkoly first argues that the district court improperly allowed the prosecutor to vouch for a cooperating witness's credibility by eliciting testimony on direct examination regarding the witness's agreements

with government agents and by introducing those agreements into evidence.

■ "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.1993). Where, as here, the defendant did not timely object to the alleged vouching, the district court's decision to allow it constitutes reversible error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice." *Id.* (quoting *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991) (internal quotations omitted)). We have eschewed a "bright line rule" for determining when alleged vouching must result in reversal, relying instead upon a totality of the circumstances test. *Id.* at 1278.

■ The witness, Soheil Nazari, was a drug dealer induced to cooperate by promises of leniency if he helped agents compile the evidence leading to Tavakkoly's arrest. The prosecutor questioned Nazari extensively about his criminal history including his convictions, his failures to appear at trials, his drug use, his flight from the United States as a fugitive from justice, and his eventual return and surrender to law enforcement officers for prosecution.

In the course of that direct examination, the prosecutor also asked Nazari about his agreements with government agents:

Q. And what did you understand the nature of your cooperation to be?

A. That I was going to cooperate, continue as I was, stay—keep my cover, record all conversations, be truthful and honest with the government and not commit any crimes.

* * * * * *

Q. And showing you what's been marked as 100 for identification, do you recognize that document?

A. Yes, I do.

Q. And what do you recognize it to be?

A. It's an agreement that I made with the DEA that I wouldn't commit any crimes, that I would be truthful.

Q. Well, without going into that, just do you—is that, in fact, a copy of the agreement that you remember entering into on January 29, 1993?

A. Yes.

* * * * * *

Q. What was your understanding of the interim cooperation agreement that you had with the government?

A. My understanding was that I would tell the truth to the government and continue working as an informant, and would not lie or do anything that—commit any crimes, and ... in return the government would take [that into] consideration as to my cooperation.

The prosecutor's questions did not touch directly on the truthfulness requirement of the agreements. They asked Nazari how he understood the agreements as a means of explaining why he continued to act as a drug dealer, why he taped his conversations with Tavakkoly, and why he was cooperating with government agents. The prosecutor did not do so in an unbalanced fashion that the jury might construe as an assurance that the witness was telling the truth. In fact, the prosecutor spent a great deal of time exploring Nazari's criminal history, his years as a fugitive, and his violation of the agreement with government agents by continuing to use drugs. When Nazari offered unprompted testimony that the agreement required him to testify truthfully, the prosecutor did his best to avoid the topic and to guide the testimony in another direction. He stopped Nazari when he began to testify about the truthfulness requirement and indicated that he did not want to "go[ ] into that."

We have declined to declare much more egregious prosecutorial conduct to be vouching. In *United States v. Lew*, 875 F.2d 219, 223–24 (9th Cir.1989), the prose-

cutor stressed the truthfulness requirement during his opening statement and elicited testimony about it from the witness on direct examination. We held that "the government vouching in this case did not rise to the level of plain error" because the court instructed the jury to view the witness's testimony with caution and because the prosecutor presented other witnesses and evidence to corroborate that testimony. *Id.* at 224.

Similarly, in *Necoechea*, 986 F.2d at 1278, the prosecutor stressed the truthfulness requirement during his opening statement and elicited testimony about it from the witness on direct examination. We held that because the government's opening statement did not indicate that it would monitor the testimony for truthfulness and its direct examination merely explored the terms of the witness's agreement and did not "imply a guaranty of [her] truthfulness," the prosecutor's conduct did not amount to vouching. *Id.*

The prosecutor in this case did not imply a guaranty of Nazari's truthfulness—in fact, the prosecutor did not directly question Nazari regarding the truthfulness requirement at all. The prosecutor merely conducted a candid and thorough direct examination to set before the jury an accurate picture of the witness's history and his role in the investigation. Such prosecutorial conduct does not constitute vouching. The district court properly permitted the prosecutor to elicit the testimony from the cooperating witness.

**B**

Tavakkoly next argues that the district court did not properly instruct the jury to view Nazari's testimony with caution because he was a government informant offering his testimony in exchange for a benefit. The Federal Rules of Criminal Procedure permit appellate challenges to jury instructions only if a party states its objection before the jury retires:

> The court shall inform counsel of its proposed action upon the requests [that the court instruct the jury on the law]

prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times. *No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Fed.R.Crim.P. 30 (emphasis added); *see also United States v. Savage*, 67 F.3d 1435, 1439 (9th Cir.1995) (objection to jury instruction waived where not raised below).

■ If a party fails to object to a jury instruction at trial, we may nonetheless review the instruction to determine whether it engendered "error seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir.2000); *see also United States v. Kessi*, 868 F.2d 1097, 1103 (9th Cir.1989) (Reversal is warranted only if it is "highly probable that the error materially affected the verdict."). "Improper jury instructions will rarely justify a finding of plain error." *United States v. Marin–Cuevas*, 147 F.3d 889, 893 (9th Cir.1998) (quoting *United States v. Armijo*, 5 F.3d 1229, 1232 (9th Cir.1993)).

■ No such error exists in this case. Tavakkoly's counsel requested that the jury receive Ninth Circuit Model Jury Instruction 4.9, instructing the jury to consider Nazari's testimony "with greater caution than that of other witnesses." The district court instructed the jury as follows:

> You have heard evidence that Soheil Nazari has been convicted of a felony. You have also heard testimony that Soheil Nazari has received compensation and other benefits from the Government. These benefits include plea bargains in which certain charges have been

dropped or reduced and a reduction on his sentence in a prior case was granted. You may consider all of this evidence in deciding whether to believe this witness and how much weight to give to his testimony. Testimony of this witness should be received with caution.

This instruction sufficiently conveyed to the jury the need to view Nazari's testimony with caution. Failure to use the precise diction requested by Tavakkoly did not materially affect the verdict or constitute error seriously affecting the fairness or integrity of his trial.

## C

■■■■ Tavakkoly also argues that his conviction for possession with intent to sell opium must be overturned because "[t]he Government failed to introduce any competent evidence that appellant possessed [saleable] quantities of opium." We "review the sufficiency of the evidence supporting a conviction by examining whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Willard,* 230 F.3d 1093, 1095 (9th Cir.2000). Where, as here, the "defendant fails to renew his motion for judgment of acquittal at the close of all evidence, we will review a claim of insufficiency of the evidence only for plain error." *United States v. Carpenter,* 95 F.3d 773, 775 (9th Cir.1996).

■■■■ The record is replete with evidence that Tavakkoly possessed saleable quantities of opium. Several of the officers who executed the warrant described the quantities of opium they recovered. The parties stipulated that a chemist determined that the opium weighed 1,350.6 grams. The government presented uncontroverted expert testimony that any quantity over 500 grams was inconsistent with possession for personal use. The evidence

introduced by the government was sufficient to allow the jury to find that Tavakkoly intended to distribute opium.

## D

■■■■ Tavakkoly further argues that the district court improperly considered a prior conviction in sentencing him because the prosecutor delayed filing an information regarding the foreign conviction until the five-year statute of limitation had run, thereby depriving Tavakkoly of his right to challenge the conviction. We review de novo a district court's determination that a prior conviction may be used to enhance a defendant's sentence. *United States v. Allen,* 88 F.3d 765, 771 (9th Cir.1996).

Section 851 permits defendants to challenge a prior conviction at sentencing only if the conviction occurred within five years of the filing of the information alleging it. *See* 21 U.S.C. § 851(c). Tavakkoly was convicted of a drug crime in Germany in 1991. The prosecutor filed a § 851 information on April 8, 1998. Tavakkoly was therefore time-barred from challenging his prior conviction.

Tavakkoly says that the prosecutor unfairly delayed filing the § 851 information. The statute requires only that the prosecutor file an information "before trial, or before entry of a guilty plea...." 21 U.S.C. § 851(a). The prosecutor filed the information approximately a month before the trial began. The prosecutor therefore complied with the statute.[1] We affirm the district court's decision to enhance Tavakkoly's sentence because of his prior conviction.

## E

■■■■ Finally, Tavakkoly challenges the consecutive six month term imposed for violating 18 U.S.C. § 3147. Tavakkoly continued dealing drugs while on pretrial

---

1. The record indicates that the prosecutor delayed filing the § 851 information at Tavakkoly's request as part of ongoing plea negotiations. The district court also gave Tavakkoly an opportunity to challenge the prior conviction notwithstanding the statutory bar. The defendant offered no satisfactory challenge to his prior drug trafficking offense.

release in another federal narcotics case. He argues that the district court improperly used that fact twice: first to raise his offense level under the Sentencing Guidelines and then to impose a consecutive term of imprisonment under § 3147. A district court's determination of how a statute applies to the Sentencing Guidelines is a determination of law that we review de novo. *See United States v. Seesing,* 234 F.3d 456, 459 (9th Cir.2000).

 Under § 3147:

> A person convicted of an offense committed while [on pretrial release] shall be sentenced, in addition to the sentence prescribed for the offense to ... a term of imprisonment of not more than ten years if the offense is a felony.... A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

The statute required the district court to sentence Tavakkoly, in addition to the sentence for the underlying convictions, to a consecutive term of imprisonment of not more than ten years.

Sentencing Guideline § 2J1.7 disposes of the argument:

> If an enhancement under 18 U.S.C. § 3147 applies, add 3 levels to the offense level for the offense committed while on release as if this section were a specific offense characteristic contained in the offense guidelines for the offense committed while on release.

The district court did so.

The comment cautions that "[t]he court will have to ensure that the 'total punishment' (i.e., the sentence for the offense committed while on release plus the sentence enhancement under 18 U.S.C. § 3147) is in accord with the guideline range for the offense committed on release, as adjusted by the enhancement in this section." Tavakkoly's total punishment (126 months) is within the guideline range for the offense committed on release (108 months to 135 months). We therefore

affirm the district court's application of U.S.S.G. § 2J1.7 and 18 U.S.C. § 3147.

## III

Tavakkoly received a fair trial. The district court properly enhanced Tavakkoly's sentence because of his prior drug conviction and because he committed these drug crimes while on pretrial release in another federal narcotics case.

**AFFIRMED.**