**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony ZARAGOZA, aka Coco,
Defendant–Appellant.**

---

United States of America,
Plaintiff–Appellee,

v.

Francisco Ruiz Martinez, aka Frank Martinez, aka Puppet, aka Pancho, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Alberto Pina, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Hector Rodriguez, aka Hector Eliseo Rodriguez–Ramirez, Hector Eliseo Rodriguez, Hector Eliseo Ramirez, "Moreno" Moniker, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Nelson Serrano–Garcia, Defendant–Appellant.

Nos. 03–50005, 03–50060, 03–50078, 03–50241, 04–50162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 2006.*

Submitted Nov. 13, 2006.**

Filed Dec. 13, 2006.

* As to Anthony Zaragoza (No. 03–50005), Francisco Ruiz (No. 03–50060), Alberto Pina (No. 03–50078), and Nelson Serrano–Garcia (No. 04–50162).

** As to Hector Rodriguez (No. 04–50162), which the court has ordered submitted on the briefs and record without oral argument.

Bruce Riordan, Esq., Ronald L. Cheng, Esq., USLA–Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Philip Deitch, Esq., Van Nuys, CA, for Defendant–Appellant.

Darlene M. Ricker, Esq., Malibu, CA, for Defendant–Appellant.

Issac E. Guillen, Covina, CA, for Defendant–Appellant.

Law Offices of Berley & Devito, West Hills, CA, for Defendant–Appellant.

Kenneth A. Reed Law Offices, Santa Ana, CA, for Defendant–Appellant.

Before: B. FLETCHER, FERNANDEZ, and GRABER Circuit Judges.

## MEMORANDUM***

Francisco Ruiz Martinez, Anthony Zaragoza and Alberto Pina, who were prosecuted for their activities as members of the Columbia Lil' Cycos (CLCS), appeal their convictions and sentences. Nelson Serrano–Garcia and Hector Rodriguez, also members of CLCS, appeal their sentences only. We affirm the convictions, vacate the sentences of Martinez, Zaragoza and Pina, affirm the sentence of Serrano, and dismiss Rodriguez's appeal.

■ (1) The district court refused to suppress the results of a telephone wiretap order obtained by the government. We

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

agree with the district court that the issuing judge did not abuse his discretion when he determined that issuance of the wiretap order was necessary. *See* 18 U.S.C. § 2518(3)(c); *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974); *United States v. Smith*, 893 F.2d 1573, 1582 (9th Cir.1990); *United States v. Bailey*, 607 F.2d 237, 241–42 (9th Cir.1979). Viewing the application for the tap in a practical commonsense fashion, as we must,[1] it is apparent that a wiretap was necessary to the investigation of CLCS, despite the fact that some success had been achieved by the use of more traditional methods.[2]

■ (2) The district court did not abuse its discretion when it refused to order a *Franks*[3] hearing. No substantial preliminary showing of a deliberate or reckless misstatement in or omission from the wiretap application has been made here. *See United States v. Shryock*, 342 F.3d 948, 976–77 (9th Cir.2003); *Bennett*, 219 F.3d at 1124. Much less has there been a showing of materiality. *See id.*

■ (3) As the government concedes, the district court did err when it admitted some information from the statements that codefendants had made, or acceded to, when they resolved their own cases through guilty pleas. *See Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). However, that violation of the Confrontation Clause[4] is subject to harmless error review. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680–81, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000). Given the record in this case, including Zaragoza's own testimony, we are satisfied that the error was harmless beyond a reasonable doubt.

■ (4) The district court did not abuse its discretion when it admitted expert testimony about the Mexican Mafia. The evidence established that Detective Larry Martinez was, indeed, reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); *see also Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063–64 (9th Cir.2002). And, the mere fact that some testimony from Detective Martinez had come in before the district court declared that he was a Mexican Mafia expert does not change our conclusion, especially since no objection had been made before that point in the trial. *See Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176; *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir.2000). Moreover, the evidence regarding the Mexican Mafia and its interactions with street gangs like CLCS was highly relevant to explain CLCS's own hierarchy and activities. *See United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir.1987). Nor was that highly probative evidence unduly prejudicial. *See United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir.1990).

Detective Martinez did make some comments about CLCS itself, although he was not an expert regarding that gang. Nevertheless, he conceded before the jury that he was not an expert on CLCS, the few asthenic statements he made were cumulative to other evidence which was admitted, and the district court expressly instructed the jury that his expertise was limited to the Mexican Mafia. The defendants were not prejudiced.

1. *Bailey*, 607 F.2d at 241–42.

2. *See United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir.2000); *United States v. Sandoval*, 550 F.2d 427, 429–30 (9th Cir.1976).

3. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

4. U.S. Const. amend. VI, cl. 3.

**(5)** The government presented ample evidence[5] to demonstrate that CLCS was a RICO[6] criminal enterprise within the meaning of 18 U.S.C. § 1961(4). *See United States v. Fernandez*, 388 F.3d 1199, 1223–24 (9th Cir.2004), *cert. denied*, 544 U.S. 1043, 125 S.Ct. 2286, 161 L.Ed.2d 1077 (2005); *Shryock*, 342 F.3d at 985–86; *Chang v. Chen*, 80 F.3d 1293, 1297, 1299 (9th Cir.1996).

Similarly, the government submitted more than enough evidence to enable a rational trier of fact to determine that Martinez and Zaragoza aided and abetted the commission of the drug crimes. They took significant steps to assure the success of the sellers and obtained significant income by sharing in the profits from the sales. *See United States v. Ramirez–Robles*, 386 F.3d 1234, 1241–42 (9th Cir.2004); *United States v. Ramos–Rascon*, 8 F.3d 704, 711 (9th Cir.1993); *United States v. Sanchez–Mata*, 925 F.2d 1166, 1168–69 (9th Cir.1991); *cf. United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir.2001).

Finally, there can be no real doubt about the sufficiency of the evidence to show that Zaragoza conspired to import a significant amount of drugs into prison so that he could distribute them. Even without his own recorded statements, the very quantity of the drugs involved supported the inference that he was not simply going to use all of them himself. *See United States v. Tavakkoly*, 238 F.3d 1062, 1067 (9th Cir.2001); *United States v. Valdovinos*, 558 F.2d 531, 534 (9th Cir.1977).

**(6)** The district court gave instructions, which were agreed upon by the government and the defendants. Those instructions accurately informed the jury about what it had to find in order to determine that Martinez, Zaragoza and Pina participated in the conduct of CLCS's affairs. *See* 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 178–79, 184–85, 113 S.Ct. 1163, 1170, 1173, 122 L.Ed.2d 525 (1993). The district court also correctly instructed the jury on the principle of aiding and abetting with respect to the substantive RICO acts. In so doing, the district court did not err. To the extent that it is argued that the jury could have been confused about the differences between participation and aiding and abetting, we do not agree. Moreover, given the overwhelming evidence against these defendants, it is clear to us beyond a reasonable doubt that any ambiguity did not affect the verdict. *See Shryock*, 342 F.3d at 986.

**(7)** While we affirm the convictions of Martinez and Zaragoza, the advent of *United States v. Booker*, 543 U.S. 220, 245–46, 125 S.Ct. 738, 756–57, 160 L.Ed.2d 621 (2005), requires us to remand to the district court so that it can proceed to determine whether its sentencing decisions would be affected by the fact that the Guidelines are no longer mandatory. *See United States v. Ameline*, 409 F.3d 1073, 1084–85 (9th Cir.2005) (en banc); *United States v. Moreno–Hernandez*, 419 F.3d 906, 915–16 (9th Cir.), *cert. denied*, —— U.S. ——, 126 S.Ct. 636, 163 L.Ed.2d 515 (2005).

**(8)** Pina asserts that the district court erred in calculating his Guideline sentence. On the record as it now stands, we agree.[7]

---

**5.** *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir.1995).

**6.** Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

**7.** Were we to hold otherwise, we would remand for further consideration of his sentence for the reasons stated in part 7 of this disposition.

■ First, the district court erred in calculating Pina's base offense level for his drug convictions. *See* USSG § 2D1.1(c)(1).[8] Undoubtedly, Pina is responsible for his own acts,[9] those he aided and abetted,[10] and "in the case of a jointly undertaken criminal activity . . ., all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."[11] However, that requires an individualized evaluation of the amount of drugs for which he is responsible, rather than a mere allocation to him of all drugs involved in the overall conspiracy. *See United States v. Garcia–Sanchez,* 189 F.3d 1143, 1147–48 (9th Cir.1999). Here, we do not perceive, nor did the presentence report or the district court explain, why Pina was held responsible for a month's worth of all CLCS drug proceeds when he only had a hand in collection of a portion of those and only for a two-week period. Absent that explanation, we must set aside the base offense determination and remand. *See United States v. Cantrell,* 433 F.3d 1269, 1279 (9th Cir. 2006); *United States v. Gamez–Orduño,* 235 F.3d 453, 464 (9th Cir.2000).

■ The district court also added four points to Pina's offense level on the basis that the victim of an attack, Romero, sustained a life-threatening bodily injury. *See* USSG § 2A2.1(b)(1)(A). However, the evidence shows that while Pina did conspire to murder Romero, his conspiracy came to naught. In fact, a wholly separate conspiracy resulted in the attack on Romero. Thus, it cannot be said that Pina caused the victim to sustain the injury in question.

■ Finally, the district court added four points to Pina's offense level on the basis that he possessed firearms in connection with another felony. *See* USSG § 2K2.1(b)(5). No doubt he possessed firearms. No doubt he committed some felonies. However, neither the presentence report nor the district court pointed to any evidence that he possessed those weapons in connection with his felonious activities—drug collection and violent assaults, if any. The guns, for all the evidence shows, were not carried anywhere, but simply lay under his bed at home. *See United States v. Ellis,* 241 F.3d 1096, 1099–1100 (9th Cir.2001); *United States v. Polanco,* 93 F.3d 555, 566–67 (9th Cir. 1996); *United States v. Routon,* 25 F.3d 815, 819 (9th Cir.1994).

Therefore, we must vacate Pina's sentence and remand for resentencing.

■ (9) Serrano asserts that the district court erred when it refused to give him a two point minor role downward adjustment of his offense level. *See* USSG § 3B1.2(b). However, on this record we cannot say that the district court clearly erred when it determined that Serrano was not substantially less culpable than the average participant in these crimes. *See United States v. Rojas–Millan,* 234 F.3d 464, 474 (9th Cir.2000); *United States v. Ladum,* 141 F.3d 1328, 1348 (9th Cir. 1998); *United States v. Benitez,* 34 F.3d 1489, 1497–98 (9th Cir.1994).

■ (10) Rodriguez appeals his sentence, entered pursuant to a plea agreement, on the basis that the advent of *Booker* means that he is not bound by his appeal waiver. He is incorrect. We enforce knowing and voluntary waivers of appeal rights. *See United States v. Anglin,* 215 F.3d 1064, 1066 (9th Cir.2000); *United States v. Michlin,* 34 F.3d 896, 898

---

**8.** All references are to the Sentencing Guidelines effective November 1, 2002.

**9.** USSG § 1B1.3(a)(1)(A).

**10.** *Id.*

**11.** USSG § 1B1.3(a)(1)(B).

(9th Cir.1994). His was knowing and voluntary. *Booker* did not vitiate that waiver. *See United States v. Pacheco–Navarette,* 432 F.3d 967, 971 (9th Cir.2005), *cert. denied,* —— U.S. ——, 127 S.Ct. 197, 166 L.Ed.2d 161 (2006); *United States v. Cortez–Arias,* 425 F.3d 547, 548 n. 8 (9th Cir.2005), *amending,* 415 F.3d 977 (9th Cir.2005); *United States v. Cardenas,* 405 F.3d 1046, 1048 (9th Cir.2005).

Conviction AFFIRMED as to Zaragoza (No. 03–50005), Martinez (No. 03–50060), and Pina (No. 03–50078). Sentence as to Zaragoza and Martinez VACATED and REMANDED pursuant to *Ameline*; sentence as to Pina VACATED and REMANDED for a new sentencing hearing; sentence as to Serrano (No. 04–50162) AFFIRMED. Appeal of Rodriguez (No. 03–50241) DISMISSED.

B. FLETCHER, J., concurring in part and dissenting in part.

I concur in the majority's memorandum disposition, with the exception of its resolution of issue 10: whether or not Rodriguez is barred from appealing his sentence by the terms of his plea agreement. I believe he is not. The question is whether Rodriguez has waived his right to appeal. We construe any waiver narrowly and strictly against the drafter—in this case, the Government.

By the terms of the plea agreement, Rodriguez waived his right to appeal if the court found an offense level of 35 or lower and did not depart upwards in imposing his sentence. The sentence was consistent with these terms. However, Rodriguez further reserved his right to challenge his sentence in any collateral proceeding if an explicitly retroactive change in the Sentencing Guidelines, sentencing statutes, or statutes of conviction occurred.

In *Booker,* the Court explicitly changed both the sentencing statutes and Sentencing Guidelines. The Court "modified ... the federal sentencing statute" by severing and excising 18 U.S.C. § 3553(b)(1), "the provision of the federal sentencing statute that makes the Guidelines mandatory." *Id.* at 245, 125 S.Ct. 738. Moreover, *Booker* made clear that its holding applied to all cases—like appellant's—pending on direct appeal. *Id.* at 268, 125 S.Ct. 738 ("[W]e must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review."); *United States v. Ameline,* 409 F.3d 1073, 1084 (9th Cir. 2005) ("*Booker* explicitly stated that its holding applies to all cases pending on direct appeal."). Thus, *Booker* not only produced a change in the applicable sentencing statutes and Guidelines, it produced a change that was explicitly retroactive, at least for the class of individuals, like Rodriguez, whose cases were pending on direct appeal.

Since the change occurred while Rodriguez's direct appeal was pending, we must decide whether he may press his right to a *Booker* remand on direct appeal or must wait for collateral proceedings. I conclude that he may press it on direct appeal. Obviously, both the government and Rodriguez intended that he have the benefit of a favorable change in the sentencing regime when it might occur. We should not make Rodriguez a victim of the government's inartful drafting.

Admittedly, the exact words of Rodriguez's plea agreement entitle him only to a collateral attack of his sentence, and not to direct review. This result is manifestly unjust and, I suggest, unintended. The plea agreement indicates an awareness, on the part of both the government and appellant, that the applicable sentencing scheme might be altered in appellant's favor. However, the *Booker* decision was handed down more quickly than either the government or Rodriguez expected, com-

ing before he had exhausted his direct review. As a result, the government would now have appellant wait until he can collaterally attack his sentence before receiving the benefit that he bargained for in his plea agreement.

Such a delay serves the interest of neither party. Rodriguez is unable to vindicate his Sixth Amendment rights until an as-yet-unknown future date. Meanwhile, the government accomplishes nothing other than to delay Rodriguez's day in court. Refusing to hear Rodriguez's claim on direct review does not change the substance of the ultimate adjudication.

I can see no valid government interest in delaying appellant's opportunity to present his constitutional claims to a court of law. If his claims are unsubstantiated, he will simply serve the same sentence. But if appellant's Sixth Amendment claims are valid, the government has no legitimate interest in denying him the chance to obtain relief. Because allowing appellant to pursue his claims now imposes no marginal costs whatsoever on the government, and merely delays appellant's opportunity to receive relief, I would allow him to seek relief in district court at present.

None of the three cases cited by the majority, *United States v. Pacheco–Navarette*, 432 F.3d 967 (9th Cir.2005); *United States v. Cortez–Arias*, 425 F.3d 547 (9th Cir.2005); and *United States v. Cardenas*, 405 F.3d 1046 (9th Cir.2005), counsels otherwise. *Cardenas* and *Pacheco–Navarette* stand only for the narrow proposition that "a change in the law does not make a plea involuntary and unknowing." *Id.* at 1048; *Pacheco–Navarette*, 432 F.3d at 971. However, Rodriguez has not argued that he deserves a new sentencing hearing because *Booker* rendered his plea "involuntary or unknowing." He argues that he

should receive a new hearing because *Booker* changed the applicable sentencing statutes and Sentencing Guidelines—an entirely separate issue.

*Cortez–Arias* is similarly inapplicable. In that case, defendant "waived the right to appeal every aspect of his sentence, except whether his earlier crimes were 'crimes of violence.'" 425 F.3d at 548. The government offered a favorable sentencing recommendation in exchange, a promise that it ultimately fulfilled. Because the government had performed its end of the bargain, this Court reasoned that it was "entitled to the benefit of its bargain," *id.*, and appellant could not appeal. Unlike *Cortez–Arias*, Rodriguez bargained for the right to appeal in case of a change in the sentencing law, and now seeks nothing more than the benefit of the bargain he struck with the government—a benefit to which I believe he is fully entitled.

Insofar as the majority has reached the opposite conclusion, I respectfully dissent.