**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | No. 22-55199 |
| *Plaintiff-Appellee,* | D.C. No. 2:20-cv-04684-ODW-JEM |
| v. | |
| AKOP ARUTYUNYAN; ANAHIT ARUTYUNYAN, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted June 7, 2023
Pasadena, California

Filed February 22, 2024

Before: Milan D. Smith, Jr., David F. Hamilton,[*] and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the
U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

# SUMMARY[**]

## Sanctions / Default Judgment

The panel affirmed the district court's default judgment entered against defendants Akop and Anahit Arutyunyan in an action brought by Transamerica Life Insurance Company alleging defendants engaged in insurance fraud.

The district court concluded that defendants repeatedly failed to obey court orders related to discovery and entered default judgment against them. The district court also entered distinct sanctions on defendants in two separate orders.

The panel upheld the district court's order deeming defendants' objection to certain items of discovery to be forfeited and requiring production of those items. By failing to present any sufficient argument in their opening brief as to why the district court's stated grounds for that decision were erroneous, defendants forfeited any challenge to that order on appeal.

The panel held that the district court did not abuse its discretion in entering a default judgment as a sanction for defendants' violations of court orders. The panel considered whether the district court's analysis properly considered the factors in *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987), for entering a default judgment. The first two factors—the public's interest in expeditious resolution of litigation and the court's need to manage its docket—

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plainly favored entry of default on this record. The third factor—the risk of prejudice to the other party—favored a default judgment where defendants failed to comply with an order to produce specific discovery materials, and this created a sufficient risk of prejudice. The fourth factor—public policy favoring disposition of cases on their merits—weighed against default judgment, but it provided only little support for that conclusion. The fifth factor—the availability of less drastic sanctions—favored a default judgment because the district court implemented lesser sanctions before ordering a default and warned defendants of such a judgment if the non-compliance continued.

The panel held that this appeal is frivolous. In view of its frivolous nature, and the multiple misstatements made by counsel at oral argument, by separate order the panel ordered defendants and their counsel to show cause why sanctions should not be imposed under 28 U.S.C. § 1912, 28 U.S.C. § 1927, Fed. R. App. P. 38, and/or the inherent authority of this court.

**COUNSEL**

Ara J. Keropian, I, (argued), AJK Law Firm, Van Nuys, California, for Defendants-Appellants.

Michael D. Rafalko (argued) and Allison B. Goldis, Cozen O' Connor, Philadelphia, Pennsylvania; Valerie D. Rojas, Cozen O' Connor, Los Angeles, California; for Plaintiff-Appellee.

# OPINION

COLLINS, Circuit Judge:

Plaintiff-Appellee Transamerica Life Insurance Company ("Transamerica") sued Defendants-Appellants Akop Arutyunyan and his daughter Anahit Arutyunyan[1] for allegedly engaging in a conspiracy to defraud Transamerica into paying benefits under a long-term care insurance policy. Concluding that Defendants had repeatedly failed to obey court orders related to the discovery process, the district court ultimately entered default judgment against them. Defendants have timely appealed the judgment, but their arguments in this court are frivolous. Moreover, when called upon to defend his disregard of the district court's orders, Defendants' counsel at oral argument in this court made multiple blatantly false statements about his and his clients' responses to those orders. Accordingly, we affirm the judgment and, by separate order, we direct Defendants and their counsel to show cause why they should not be sanctioned.

## I

### A

In March 2016, Transamerica issued a life insurance policy to Anahit, which covered her father, Akop, as the "Insured." The policy included a "Comprehensive Long Term Care Insurance Rider," under which Transamerica generally agreed to "pay a Monthly Long Term Care Benefit when the Insured has incurred expenses for Qualified Long

---

[1] Because Defendants share the same last name, we will hereafter refer to each of them by their respective first names, "Akop" and "Anahit."

Term Care Services."  One of the requirements for triggering this long-term care coverage was that the Insured qualify as a "Chronically Ill Individual."  As defined in the rider, that term required, *inter alia*, that Akop be "certified by a Licensed Health Care Practitioner" as either suffering from "Severe Cognitive Impairment" or "being unable to perform, without Substantial Assistance from another individual, at least two out of the six Activities of Daily Living (ADLs) for an expected period of at least 90 days due to a loss of functional capacity."  These six ADLs involved specified abilities related to "Bathing," "Continence," "Dressing," "Eating," "Toileting," and "Transferring."

In December 2018, Akop filed a claim for benefits under the rider, alleging that he had torn his "left rotator cuff" and suffered from "spinal arthritis."  The following month, a nurse conducted an "onsite assessment" of Akop at his home in order "to determine whether Akop was eligible to receive benefits under the [r]ider."  During that assessment, at which Anahit was present, Defendants represented that "Akop was unable to perform four of the six ADLs defined in the [r]ider" and that he had hired a caregiver, Serob Pzdikyan, who provided him "with 2–5 hours of care in the home each day."  Additionally, at the assessment, Akop "purported to walk with an impaired gait and to require . . . a walker for ambulation at all times."  Anahit also provided written confirmation to Transamerica that "Akop was unable to perform specific ADLs and that he hired Mr. Pzdikyan as his caregiver."  In light of the information provided by Defendants, Transamerica approved the claim and began paying Akop benefits.

Over the next several months, Transamerica conducted surveillance of Akop in order to determine whether the representations made in support of the claim for benefits

were accurate. The surveillance allegedly revealed that Pzdikyan never visited Akop's home, in spite of the fact that "[o]n each date of surveillance, Akop represented to Transamerica in signed and certified Proof of Loss statements that he received between three and eight hours of care services from Mr. Pzdikyan in the home." The surveillance also assertedly revealed that Akop operated "in a highly independent and functional manner, with no apparent limitations at all." Specifically, Transamerica's operative complaint alleged that Akop "was seen walking his dog, reaching and bending, lifting objects with both hands, driving a car, shopping for groceries and other items, [and] walking without a limp or any assistive device (such as the walker he claimed to need and use)."

Based on this initial surveillance, Transamerica invoked its rights under the rider to require Akop to submit to an independent medical evaluation. The doctor who performed the evaluation, Dr. Molinar, examined Akop in April 2019. Although Dr. Molinar opined that Akop's claimed pain symptoms were "far greater than what one would expect from reading his MRI," Dr. Molinar also concluded, "[b]ased in large part on Akop's subjective representations," that Akop required substantial assistance to perform two ADLs. Because that determination was sufficient to support Akop's continuing claimed eligibility for long-term care benefits, Transamerica continued paying benefits to Akop.

Both before and after this medical examination, Transamerica continued its surveillance of Akop, and in July 2019, Transamerica also "assigned an investigator to Mr. Pzdikyan on the same dates and during the same time periods when another investigator was performing surveillance on Akop." This surveillance allegedly confirmed that Pzdikyan "did not provide care to Akop on the dates represented by

Akop to Transamerica." Transamerica's further surveillance also purportedly showed that Akop was continuing to engage in activities that were inconsistent with his claimed level of impairment.

In August 2019, Defendants "jointly signed and submitted a letter to Transamerica, the effect of which was for Anahit to take assignment of Akop's benefit payments under the [r]ider." This meant that all future benefit payments stemming from Akop's purported medical care would be sent directly to Anahit instead. The asserted basis for the assignment was that Anahit was "'the one who pays the care giver' for Akop's care." Transamerica alleged that, because Anahit had claimed to work in the medical field for several years and was "resid[ing] in the same house as Akop" at all relevant times, Anahit was "aware that Mr. Pzdikyan did not provide care as represented to Transamerica" and that Anahit was not in fact paying Pzdikyan for such services.

Transamerica subsequently provided portions of its video surveillance of Akop to Dr. Molinar, and it asked him to reevaluate his conclusions in light of that additional evidence. Stating that the video evidence changed his opinion, Dr. Molinar in January 2020 provided an addendum to his prior report in which he concluded that it was now "obvious" that Akop "was markedly exaggerating his disability and can perform all of [the listed ADLs] without difficulty despite his claims that he could not." Based on Dr. Molinar's addendum, Transamerica halted payments on the policy and denied Akop's claim. At the time that it terminated payments to Defendants, Transamerica had paid $109,381.71 in benefits.

**B**

In May 2020, Transamerica filed this suit against Defendants, alleging that they had obtained insurance benefits through fraud. Specifically, Transamerica asserted monetary claims based on fraud, civil theft, civil conspiracy, and restitution. Transamerica also sought a declaration that, in light of the fraudulent conduct, the policy was void. Transamerica sought compensatory and punitive damages, statutory treble damages, attorney's fees, declaratory relief, and restitution. Defendants denied the core allegations, and they counterclaimed for breach of the insurance contract and for tortious bad faith denial of coverage.

In January 2021, Transamerica separately served each Defendant with interrogatories and requests for the production of documents. Dissatisfied with Defendants' responses, Transamerica sent a letter detailing the perceived deficiencies and requesting that a "meet and confer" session be scheduled. During the ensuing telephonic meet-and-confer sessions in late April 2021, counsel for Defendants agreed to provide certain supplemental responses and to produce specified categories of documents. On May 7, 2021, counsel for Transamerica sent a letter to Defendants' counsel summarizing the agreed-upon supplemental discovery that would be provided by Defendants.

After Defendants' counsel failed to produce any supplemental responses despite Transamerica's repeated follow-up inquiries, Transamerica initiated the process for filing a motion to compel. Under the local civil rules of the U.S. District Court for the Central District of California, discovery motions must be presented in the form of a "joint stipulation" that contains, "in one document signed by both counsel," the parties' respective positions concerning each

separate discovery issue that remains in dispute after the completion of the meet-and-confer process. C.D. CAL. LOCAL CIV. R. 37-2.1. The first step in preparing such a joint stipulation is for the moving party to serve on opposing counsel "the moving party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position." *See* C.D. CAL. LOCAL CIV. R. 37-2.2. Transamerica did so, as to each Defendant, on May 28, 2021. Under the local rules, the opposing party's portion of such a joint stipulation must be served within seven days, and it is then the responsibility of the moving party's counsel to prepare the final stipulation for counsel's respective signatures and for subsequent filing. *See id*. Defendants' counsel, however, did not transmit Defendants' portions of the stipulations within the requisite seven days. Instead, on June 2, 2021, Defendants' counsel sent an email attaching certain supplemental discovery materials. The email stated that counsel was "racing through finalizing some of these supplementals" and "attaching whatever I can when I receive," and the email concluded, "More to come soon."

After Defendants' counsel continued to fail to provide Defendants' portions of the joint stipulations concerning Transamerica's discovery motions, counsel for Transamerica on August 11, 2021 sent a further request for Defendants' counsel to do so by close of business the next day. When Defendants' counsel still failed to produce Defendants' portions of the joint stipulations, Transamerica on August 13, 2021 filed its portions of the respective documents as to each Defendant, together with the declaration required by the local rules explaining that opposing counsel had "failed to provide the opposing party's portion of the joint stipulation in a timely manner." C.D.

CAL. LOCAL CIV. R. 37-2.4.  The motions were noticed to be heard on September 14, 2021.  *See* C.D. CAL. LOCAL CIV. R. 6-1, 37-2.4, 37-3.  Under the local rules, Defendants' last opportunity to file a response to the motions was August 24, 2021.  *See* C.D. CAL. LOCAL CIV. R. 7-9, 37-2.4.  Defendants failed to provide any response by that date.

On September 1, 2021, the magistrate judge vacated the hearing date on the motions and issued an order to show cause ("OSC") directing Defendants to show cause by September 10 why the motions should not be granted.  The court's order specifically "admonishe[d] both Defendants that, this being a Court order, failure to comply with it brings into play the full panoply of sanctions under Fed. R. Civ. P. Rule 37(b)(2)(A)(i)–(vii)."

Defendants filed their response to the OSC on September 13, three days late.  Counsel for Defendants sought to justify that late response by asserting that an "unknown" error in his "computer system/google calendar" resulted in him missing the calendared deadline.  As to the underlying discovery dispute, Defendants argued that sanctions should not be imposed because they had provided supplemental discovery responses in June 2021; Transamerica assertedly already had "all information and documents available" to Defendants; and Defendants' "responses and objections were substantially justified."  The response did not explain why Defendants' sections of the joint stipulations had not been provided, nor did it provide, on an issue-by-issue basis, Defendants' substantive responses to the particular discovery issues raised by Transamerica's motions.  In its subsequent response to Defendants' filing, Transamerica argued that Defendants had waived their objections to discovery; that Transamerica's motions to compel should be granted; and that monetary sanctions should be imposed.

On September 21, 2021, the magistrate judge issued an order discharging the September 1 OSC.  The court accepted Defendants' counsel's explanation about a calendaring-system error because it was made under oath and was not challenged by Transamerica.  Although that calendaring-error explanation only addressed why Defendants "missed the deadline to file a response to the Order to Show Cause," the court generously construed that explanation as also providing an excuse for why Defendants "did not file their portion of the Joint Stipulation."  However, the court held that the "form of the opposition" to the discovery motions in Defendants' current filing was "deficient," because it consisted of a "running narrative" that was "unconnected to specific discovery requests."  Accordingly, the court ordered Defendants to provide Transamerica, within 10 days, Defendants' portions of the joint stipulations.  The court also ordered the parties "to meet and confer" within seven days after Defendants supplied those portions, in order "to reduce or eliminate issues for the Court to resolve."  Within seven days after that meet-and-confer session, the parties were to "file supplemental memoranda" concerning the status of the discovery disputes.

In response to this order, Defendants provided their portions of the two joint stipulations, which were then filed with the court on October 8, 2021.  On October 15, Transamerica filed its respective supplemental memoranda in support of both motions.  Defendants, however, did not file any supplemental memoranda.

On October 20, 2021, the magistrate judge issued an order calling for further briefing.  Noting that there were "an unusually large number of discovery disputes" at issue in each of the two motions, the court stated that such a large number of disputed issues "usually means that the parties did

not fulfill their mandatory duty . . . to confer in good faith to reduce or eliminate disputes that the Court must resolve." The court also remarked that some of the discovery issues appeared to have already been resolved to the extent possible. Accordingly, the court ordered another round of focused briefing to identify the remaining discovery disputes. The court instructed Transamerica by October 29 to "advise Defendants of what remains in dispute and what should be done to make responses complete," and it ordered Defendants thereafter to "serve supplemental responses" by November 5. The court also ordered the parties to meet and confer by November 12 with respect to any discovery requests still in dispute, and then to file a joint status report by November 19.

In an email sent to Defendants on October 28, Transamerica timely identified both the outstanding discovery issues that remained in dispute and what it believed Defendants needed to do to complete their discovery responses. At that point, Defendants were obligated under the October 20 order to serve their supplemental discovery responses by November 5 and thereafter to meet and confer with Transamerica by November 12. Defendants did neither.[2] Transamerica reached out to Defendants' counsel, both by email and by

---

[2] At oral argument, counsel for Defendants repeatedly insisted that he had complied with the court's order to provide supplemental responses and to meet and confer, but he was unable to provide any record support for this assertion. From our review of the record, it appears that Defendants' counsel was referring to a supplemental production provided in an October 15, 2021 email that followed an earlier meet-and-confer session. Neither that October 15 production, nor that earlier session, could possibly be thought to have complied with the *subsequent* obligations set forth in the court's October 20, 2021 order.

phone, noting Defendants' omissions and reminding counsel of the joint status report due on November 19. Finally, at 7:18 PM on November 18, Defendants' counsel emailed Transamerica's counsel as follows: "I received your email. We are in the middle of an FSC [Final Status Conference] today, and all that goes with it, but I will be dealing with this as soon as possible." However, nothing was forthcoming from Defendants before the November 19 deadline. Consequently, on November 19, Transamerica's counsel filed a declaration explaining that Transamerica had complied with the court's October 20 order, but that Defendants had not provided their supplemental responses, had not met and conferred, and had not supplied their portion of the required joint status report.

On November 22, 2021, the magistrate judge issued an order addressing both (1) Defendants' failure to comply with the October 20 order and (2) the substance of the discovery disputes. The court held that "Defendants' conduct in violating three separate provisions of this Court's October 20, 2021 Order is inexcusable." Invoking its authority under Federal Rule of Civil Procedure 37(a) and (b), the court ordered Defendants, by November 30, to provide the five specific categories of additional discovery and supplemental responses that had been set forth in Transamerica's October 28, 2021 email. The court explained that, "[b]y violating this Court's Order, Defendants lost the right to dispute any of the above requests that they had not already agreed to produce." Importantly, the order also provided that "[f]ailure to comply with this Order by November 30, 2021 will result in a recommendation to the District Court for default judgment pursuant to Rule 37(b)(2)(A)(vi)." Finally, the court further ordered Defendants to show cause "by November 30, 2021 why the Court should not impose monetary sanctions on

Defendants for their multiple violations of this Court's Order of October 20, 2021."

Defendants failed to comply with either aspect of this order by the November 30, 2021 deadline. Accordingly, on December 1, Transamerica filed a notice informing the court that (1) Defendants "did not produce the documents and information set forth in the Court's [November 22] Order by November 30, 2021" and that "no additional materials of any nature ha[d] been provided"; (2) Defendants "ha[d] not contacted [Transamerica] to advise why no production occurred or to propose a solution"; and (3) "Defendants did not respond to the Court's Order to Show Cause by November 30, 2021." Accordingly, Transamerica requested that the magistrate judge recommend to the district judge that a default judgment be entered.

On December 7, 2021, having still received no filing of any kind from Defendants, the magistrate judge issued an order concluding that Defendants had violated, in multiple respects, the court's October 20 and November 22 orders. Noting that the November 22 order had specifically warned that Defendants' failure to comply "would result in a recommendation to the District Court for default judgment pursuant to Rule 37(b)(2)(A)(vi)," the court ordered Transamerica, by December 20, "to prepare and present a proposed Report and Recommendation to the District Court" concerning the entry of default judgment against Defendants.

Two days later, counsel for Defendants filed a "Request for Reconsideration of Termination Sanctions." The first two and a half pages of that document consisted of portions of a procedural summary that were largely identical to material that had been included in Defendants' September

response to the first OSC.  In the remaining two pages of the document, Defendants defended their discovery efforts, arguing that they had produced what they could and that additional materials either could not be obtained or had properly been objected to.  As to why Defendants had not responded to the November 22 order, Defendants' counsel stated only that he "was then heavily engaged in preparation for trial on another matter, including preparation for an FSC on November 18, 2021 and a trial then scheduled to start on November 29, 2021, in which I was served with 12 motions in limine and the court there, entered various scheduling orders that required my full attention."

Addressing the subject of sanctions, Defendants argued as follows:

> Terminating sanctions should not be imposed because Defendants have provided all documents within their possession, custody or control and the requested information, to which proper objections were interposed does not justify terminating sanctions when Defendants have provided more than sufficient information, documents available to them in both their original responses and the supplemental responses, and additional supplemental responses. Plaintiff has all information from defendant/counterclaimants that they have available.  To impose such proposed

terminating sanctions is not justified under
these circumstances.

On December 20, 2021, Transamerica timely filed its
proposed Report and Recommendation regarding the entry
of a default judgment against Defendants.  Two days later,
the magistrate judge adopted that report as his own, except
that he declined to include Transamerica's proposed award
of punitive damages.  On January 5, 2022, Defendants timely
filed their objections to the Report and Recommendation.
*See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2).
Transamerica filed a timely response to those objections.
*See* FED. R. CIV. P. 72(b)(2).  On January 24, 2022, the
district judge issued an order stating that he had reviewed the
magistrate judge's Report and Recommendation, considered
Defendants' objections de novo, and adopted the Report and
Recommendation in full.  The district court entered default
judgment against Defendants and dismissed all of their
counterclaims with prejudice.  The judgment awarded, *inter
alia*, compensatory damages of $109,381.71; additional
statutory treble damages of $218,763.42 under California's
civil theft statute, *see* CAL. PENAL CODE § 496(c); and
attorney's fees of $166,394.50 under that same statute.

## II

As set forth above, the district court imposed distinct
sanctions on Defendants in two separate orders.  First, in its
November 22, 2021 order, the court held that, by failing to
comply in multiple respects with the court's October 20,
2021 order, Defendants "lost the right" to object to the five
specific categories of discovery that Defendants were
directed to produce in that order, including "Anahit's tax
returns" for the relevant years and "Defendants' passwords
for their social media accounts."  Second, the district court

held, in its January 24, 2022 order, that Defendants' multiple violations of the court's orders merited entry of a default judgment.  Defendants have failed to provide any basis for setting aside these orders.

## A

In their opening brief, Defendants argue at length that they were "entitled to stand on their objections" to Transamerica's discovery requests concerning Anahit's tax returns and Defendants' social-media-account passwords, and that the district court's order to produce these materials was an abuse of discretion.  These arguments are essentially irrelevant, because they overlook the basis for the district court's November 22, 2021 order to produce these items. That order did *not* purport to resolve the substantive validity of Defendants' objections to these discovery requests. Instead, that order found that, because Defendants had "inexcusabl[y]" failed to comply in multiple respects with the district court's earlier October 20, 2021 order, Defendants' objections to the five specified categories of discovery would be deemed, as a sanction under Rule 37, to be forfeited.  Although Defendants' opening brief acknowledges the latter ruling in its statement of facts, the argument section of the brief does not present, much less adequately develop, *any* argument that the district court abused its sanctions authority under Rule 37 in deeming Defendants' objections to these items of discovery to be forfeited.  By failing to present any sufficient argument in their opening brief as to why the district court's stated grounds for that decision were erroneous, Defendants have forfeited any challenge to that order on appeal.  *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1242 (9th Cir. 2008). We therefore uphold the district court's November 22, 2021

order requiring production of the specified items of discovery.

## B

Defendants separately challenge the district court's ultimate decision to enter a default judgment as a sanction for Defendants' violations of court orders.  Our review of that order is only for abuse of discretion, *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007), and we find none.

"We have identified five factors that a district court must consider before dismissing a case or declaring a default:

> '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [other party]; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.'"

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (alteration made, without brackets, by *Adriana Int'l*)).  Although the district court's order here did not expressly recite and individually discuss each of these "*Malone* factors," that "is not required." *Allen v. Bayer Corp.* (*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*), 460 F.3d 1217, 1226, 1236 (9th Cir. 2006) (citation omitted).  It suffices if the district court's analysis, considered in the context of the record as a whole, permits us "independently to determine if the district court has abused its discretion" in light of these factors. *Id*. at 1226

(citation omitted); *see also Conn. Gen. Life Ins.*, 482 F.3d at 1096 (holding that the district court's "terse order," which "did not engage in extended discussion," was sufficient because "the record makes application of all the factors so clear that no extended discussion was needed").

The first two *Malone* factors are typically considered together, and because they relate to docket-management issues that the district court "is in the best position" to assess, we give particular deference to the district court's judgment concerning them. *Allen*, 460 F.3d at 1227, 1236 (citation omitted). Here, the district court's order entering a default judgment set forth at length the extent to which the discovery proceedings had been protracted by Defendants' failure to comply with the October 20, 2021 and November 22, 2021 orders. On this record, the first two *Malone* factors therefore plainly favored entry of a default judgment. *See Adriana Int'l*, 913 F.2d at 1412 (noting that, in applying the five *Malone* factors, the general rule is that, in a case involving violations of court orders, "the first two factors support sanctions").

The third *Malone* factor—the "risk of prejudice" to the other party—examines the extent to which the recalcitrant parties' conduct creates a risk of either "impair[ing] the [opposing party's] ability to go to trial" or "interfer[ing] with the rightful decision of the case." *Allen*, 460 F.3d at 1227 (citation omitted). We have generally found that failure to comply with an order to produce specific discovery materials creates a sufficient risk of prejudice to satisfy this factor. *See id.*; *see also Adriana Int'l*, 913 F.2d at 1412. Defendants nonetheless assert that the particular discovery materials at issue—such as Anahit's tax returns and Defendants' social-media-account passwords—are of such trivial significance to the case that any risk of prejudice here was essentially

non-existent.  We reject this contention.  Defendants' social media accounts could reasonably be thought to contain relevant information concerning Akop's day-to-day activities that would bear upon whether he was as impaired as he claimed, and Anahit's tax returns could reasonably be thought to provide a more complete insight into her possible financial motives for participating in a fraudulent scheme to collect benefits.  Defendants' defiance of the district court's explicit order to produce this information therefore falls well within the general rule that "[f]ailing to produce documents as ordered is considered sufficient prejudice."  *Allen*, 460 F.3d at 1227.   The third factor thus favors a default judgment.

At a general level, the "public policy favoring disposition of cases on their merits"—the fourth *Malone* factor—always weighs against a default judgment, and often "strongly" so.  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).  However, this factor is not dispositive and a default judgment will still be warranted "where at least four factors support [a default judgment] or where at least three factors 'strongly' support" such a judgment.  *Id*. (citations omitted).  Moreover, we expressly recognized in *Allen* that the fourth *Malone* factor "'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction."   460 F.3d at 1228 (citation omitted).  Under *Allen*, this factor weighs against a default judgment, but it provides only "little support" for that conclusion.  *Id*.

The last remaining *Malone* factor concerns the "availability of less drastic sanctions."  *Malone*, 833 F.2d at 130 (citation omitted).  We have "identified" three additional considerations that we use "to assess whether a district court

had adequately considered less drastic sanctions: (1) whether the district court 'explicitly discussed the alternative of lesser sanctions and explained why it would be inappropriate,' (2) whether the district court had 'implemented lesser sanctions before ordering [entry of a default judgment]', and (3) whether the district court had 'warned the offending party of the possibility [of a default judgment].'" *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1170 (9th Cir. 2012) (citation omitted); *see also Malone*, 833 F.2d at 132. Each of these three considerations confirms that the fifth *Malone* factor favors a default judgment here.

As our earlier factual summary makes clear, the district court applied a measured and gradational approach in responding to Defendants' non-compliance with the court's orders and the local rules. After the district court issued an initial OSC concerning Defendants' failure to provide their portions of the joint stipulations, Defendants filed their response to that OSC three days late. Nonetheless, the district court discharged that OSC, adopting the overly generous view that Defendants' explanation for the late filing of the response to the OSC *also* served to explain why their portions of the joint stipulation had not been provided. *See supra* at 11. After concluding that the parties' papers did not adequately distill the relevant discovery issues that needed court resolution, the district court ordered a further round of briefing, but Defendants failed to perform any of the tasks assigned to them under that order: they did not provide the required supplemental responses; they did not meet and confer with Transamerica concerning the outstanding issues; and they did not provide their portion of the joint status report. Confronted with this further lack of compliance, the district court again took a measured approach. It deemed the relevant discovery objections to

have been waived; it ordered that specified discovery be provided by November 30, 2021; it issued a further OSC, this time asking whether monetary sanctions should be imposed; and it warned that non-compliance could result in a default judgment. Only after Defendants—amazingly—failed to comply with any aspect of that further order did the district court request a proposed report concerning entry of default judgment.

The record thus amply confirms that the district court "implemented lesser sanctions before ordering" a default judgment and that it also "warned the offending party of the possibility" of such a judgment if the non-compliance continued. *Hester*, 687 F.3d at 1170 (citation omitted). Although the final report and recommendation did not "explicitly discuss[] the alternative of lesser sanctions and explain[] why it would be inappropriate," *id*. (citation omitted), we have long held that "explicit discussion of alternatives is unnecessary if the district court actually tries alternatives before employing the ultimate sanction" of dismissal or a default judgment, *Malone*, 833 F.2d at 132. Here, the magistrate judge's report recounted the court's prior application of lesser sanctions and the continuing non-compliance that followed, and it then expressly concluded that, on this record, the sanction of a default judgment was warranted. Accordingly, all three of the considerations for applying the fifth *Malone* factor are satisfied here, and that fifth factor therefore favors a default judgment. *See Adriana Int'l*, 913 F.2d at 1413; *Malone*, 833 F.2d at 132.

Because four of the five factors supported entry of a default judgment, the district court did not abuse its discretion in entering such a judgment in favor of Transamerica. *Hernandez*, 138 F.3d at 399. And because Defendants' opening brief does not challenge the scope of

the relief that the district court awarded upon entry of default, any such objections have been forfeited. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). We therefore affirm the district court's judgment.

## III

Having painstakingly recounted, in fulsome detail, the relevant facts and the applicable law concerning Defendants' challenges to the district court's orders in this case, we think it is abundantly clear that "the result is obvious" and "the appellant[s'] arguments are wholly without merit." *Adriana Int'l*, 913 F.2d at 1417. In a word, this appeal is objectively "frivolous." *Id*.

Moreover, at oral argument for this appeal, Defendants' counsel repeatedly minimized, if not misrepresented, his lack of compliance with the district court's orders in this case. For example, at one point during argument, counsel asserted that, "[i]n terms of our compliance with the court's orders, at no point did we ignore or flout our responsibility to respond to discovery." Moreover, as noted earlier, Defendants' counsel apparently relied on pre-October 20, 2021 conduct in wrongly claiming that he had taken steps to comply with the district court's *later* October 20, 2021 order. *See supra* note 2. Counsel also inaccurately claimed that "[t]he one item that I missed was the joint statement to the court where I was in the middle of trial—at FSC and trial." As we have recounted, the record flatly belies this claim that the failure to supply Defendants' portion of the joint status report due on November 19 was the "one item that [Defendants' counsel] missed" in terms of complying with the district court's orders. It may well be that, when it comes to evaluating these multiple misstatements, this case may ultimately call for the application of what has been called

"Hanlon's Razor": "Never attribute to malice that which is adequately explained by stupidity." *See Hanlon's Razor*, Wikipedia, https://en.wikipedia.org/wiki/Hanlon's_razor. But even if these comments were not deliberate misstatements, it seems clear that they were at least made to this court with reckless disregard for their accuracy.

In view of the frivolous nature of this appeal and the multiple misstatements made by counsel at oral argument, we have ordered Defendants and their counsel, by separate order filed contemporaneously herewith, to show cause why this court should not impose sanctions against them under 28 U.S.C. § 1912, 28 U.S.C. § 1927, Federal Rule of Appellate Procedure 38, and/or the inherent authority of this court, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–51 (1991). *See generally McConnell v. Critchlow*, 661 F.2d 116, 118–19 (9th Cir. 1981). Defendants' counsel is likewise ordered to show cause why this court should not refer this matter to the State Bar of California.

**AFFIRMED; ORDER TO SHOW CAUSE IS ISSUED BY SEPARATE ORDER.**