NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 1 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LARRY SEVERSON,

      Petitioner-Appellant & Cross-Appellee,

  v.

RUSSELL ROSS, Warden of the Idaho State
Correctional Center, et al.,

      Respondents-Appellees & Cross-Appellants,

UNITED STATES OF AMERICA,

      Intervenor.

Nos. 23-3187 & 23-3247

D.C. No.
1:20-CV-00429-REP

MEMORANDUM*

Appeal from the United States District Court
for the District of Idaho
Raymond E. Patricco, Magistrate Judge, Presiding

Argued and Submitted November 4, 2025
Portland, Oregon

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

Petitioner Larry Severson was convicted of poisoning and murdering his wife,

Mary. Following direct appeal and requests for post-conviction relief, Severson

petitioned the district court for a writ of habeas corpus. The magistrate judge denied

---

    *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

his petition but issued a certificate of appealability (COA) on Severson's claim that his trial attorneys rendered ineffective assistance of counsel by failing to object to improper closing remarks by the prosecutor. Severson now appeals the magistrate judge's order rejecting that claim. He also requests that we expand the COA so he can challenge the prosecutor's alleged misconduct on due process grounds.

With jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm the magistrate judge's denial of habeas relief on both the certified and uncertified issues.

The parties are familiar with the facts, so we do not recount them here except as necessary to provide context for our ruling.

1. Respondents challenge the magistrate judge's order rejecting their theory that Severson's habeas petition is time-barred. However, the magistrate judge was correct. Severson filed his petition in August 2020, just four months after the Idaho Court of Appeals resolved his 2018 application for post-conviction relief. *See State v. Severson*, No. 46343, 2020 WL 1899821, at *1 (Idaho Ct. App. Apr. 17, 2020). Because "[t]he time during which a properly filed application for State post-conviction . . . review . . . is pending shall not be counted toward any period of limitation," Severson's petition was filed well within the applicable "1-year period of limitation." 28 U.S.C. § 2244(d).

But according to Respondents, Severson's 2018 application was not "properly filed," as it was procedurally barred by Idaho Code § 19-4908. And so, they argue,

the limitations clock began ticking in July 2019, rendering Severson's August 2020 petition untimely. Respondents are mistaken. A procedural bar to relief, such as a state law barring claims "previously determined on the merits," does not render a post-conviction application improperly filed under § 2244(d). *Artuz v. Bennett*, 531 U.S. 4, 10–11 (2000) (quoting N.Y. Crim. Proc. Law § 440.10(2)). Idaho's statute barring post-conviction relief based on "ground[s] finally adjudicated" in a prior application falls neatly within this doctrine. Idaho Code § 19-4908. The statute sets limits on the "claims" an applicant can advance without purporting to impose any "condition to filing." *Artuz*, 531 U.S. at 9, 11. Severson's petition was thus "properly filed" within the meaning of § 2244(d).

Although we have twice noted that "improper successive [applications]" do not toll the limitations period under § 2244(d)(2), we made those comments in dicta—without assessing their congruity with *Artuz* or examining the state-law procedural bars at issue. *See Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010); *Blackman v. Cisneros*, 122 F.4th 377, 384 & n.3 (9th Cir. 2024) (quoting *Porter*, 620 F.3d at 958). Neither case vitiates our duty to apply *Artuz* to the facts before us.

2.     Severson raises a threshold issue of his own. He argues that the Antiterrorism and Effective Death Penalty Act (AEDPA), which governs claims for federal habeas relief by state prisoners, "runs afoul of Article III" following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369

(2024). Severson forfeited this challenge, however, as he failed to raise the issue in his opening brief. *See Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024).

3. When denying Severson's habeas petition, the magistrate judge certified for appeal the question whether Severson's trial attorneys provided ineffective assistance of counsel in violation of the Sixth Amendment. To prevail on this claim, Severson must show that his "counsel's performance was deficient," and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficiency" element asks whether the quality of representation fell "below an objective standard of reasonableness." *Id.* at 688. In making this assessment, we must be "highly deferential" to counsel's decisions. *Id.* at 689. The "prejudice" element asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "substantial," not merely "conceivable," probability. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

On habeas review, AEDPA restricts relief to cases where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). This standard is met only if no "fairminded jurist[] could disagree"

that the state court contradicted Supreme Court precedent. *Harrington*, 562 U.S at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Since *Strickland* and AEDPA "are both highly deferential" standards, when both apply, "review is doubly so." *Id.* at 105 (cleaned up). At this juncture, we review "the last reasoned state court decision." *Balbuena v. Sullivan*, 980 F.3d 619, 629 (9th Cir. 2020). But if the "state court has not reached the merits" of a given issue, we "review it de novo." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Severson contends that his counsel rendered deficient performance by failing to object to certain comments by the prosecutor, including that his expert was "a very credible individual, with nothing to lose," and that "[t]here is no innocence in this courtroom except the innocence of Mary Severson." We agree with Severson that these and other remarks were inappropriate and objectionable, and should never have been uttered. *See, e.g.*, *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999) ("As a general rule, a prosecutor may not express" her "belief in the credibility of government witnesses."); *Ford v. Peery*, 999 F.3d 1214, 1224, 1227 (9th Cir. 2021) (concluding that a prosecutor misstated the law when remarking to the jury "that the presumption of innocence was 'over'").

However, that does not necessarily mean that Severson's attorneys' performance fell beneath an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. We owe deference both to Severson's counsel and to the Idaho Court

of Appeals, which concluded that Severson's counsel was *not* deficient (except, perhaps, with respect to the vouching comment). *See Severson v. State*, No. 45780, 2019 WL 1787315, at *6 (Idaho Ct. App. Apr. 24, 2019) (*Severson IV*).[1] Ultimately, we need not review the Idaho court's "deficiency" determinations comment-by-comment because, even presuming that counsel was duty-bound to object to each of the challenged remarks, Severson's *Strickland* claim still fails on the prejudice prong.[2]

Severson is correct that no Idaho court analyzed the impact of these statements on the verdict cumulatively, as none found more than one instance of deficiency to cumulate. *See State v. Severson*, 215 P.3d 414, 441–43 (Idaho 2009) (*Severson I*); *Severson IV*, 2019 WL 1787315 at *7. However, this point is of no help to him.

Analyzing the issue de novo, *Pirtle*, 313 F.3d at 1167, there is no "reasonable probability" that "the result of the proceeding would have been different" had

___

[1] Making this argument more difficult for Severson is a line of cases explaining that, given the numerous sound reasons an attorney might "refrain from objecting during . . . closing argument, absent egregious misstatements, the failure to object during closing argument" generally falls "within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (quoting *Strickland*, 466 U.S. at 689); *see also, e.g.*, *United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998) ("[A] few missed objections alone, unless on a crucial point, do not rebut the strong presumption" that counsel's performance was "reasonable.").

[2] We assume without deciding that the "cumulative error" doctrine is "clearly established" for AEDPA purposes, such that the Court must cumulate the *Strickland* deficiencies and analyze their total impact on the verdict.

Severson's attorneys objected to the challenged remarks.  *Strickland*, 466 U.S. at 694.  The 17-day trial record is replete with uncontroverted evidence of Severson's guilt.  Some of the most incriminating examples include the unexplained testimony (1) that Mary's weight-loss pills were laced with drain cleaner and that the packaging had been tampered with; (2) that residue from trash seized at Severson's workplace was consistent with the same drain cleaner; (3) that Severson did not call 911 after supposedly finding his wife unresponsive, even though he was the only other person home; (4) that he told others he wished to divorce Mary, but was financially incapable of doing so because their home, business, and cars were all in her name; (5) that he planned for her death, including (a) by falsely telling others that Mary had cancer, but telling them not to mention the cancer to her, and (b) by getting engaged to another woman and making plans for her to move into his home (which was in Mary's name); (6) that he sought out Mary's life-insurance policy mere hours after her death, falsely claiming that his mother-in-law had inquired about it; (7) that he lied to his daughter-in-law and hospital staff about Mary taking sleeping pills, although he had personally refilled her prescription the day before; and (8) that authorities found a bag of sleeping pills in his house, concealed in a hat labeled "Dad."

In addition, the trial judge repeatedly instructed the jury that the prosecutor's arguments were not evidence, and that the jury's verdict must rest on evidence alone.

Courts "generally presume that jurors follow" such instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001).

The combination of these factors renders defense counsel's passivity during closing arguments harmless. *See Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991) (concluding that counsel's non-objections did not prejudice petitioner where a "substantial amount of . . . evidence pointed squarely at his guilt, and the jury was properly advised that counsel's statements were merely argument, not evidence"); *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (similar).

4. Beyond his *Strickland* claim, Severson asks that we expand the COA, so he can assert a due process claim based on the prosecutor's misconduct.[3] We grant his request but hold that this claim also fails for lack of prejudice.

To show a due process violation, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Instead, the "due process analysis in cases of alleged prosecutorial misconduct" centers on "the fairness of the trial." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A fair trial is one "resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Severson's burden is to show "a reasonable probability" that the misconduct "rendered the trial

---

[3] The magistrate judge declined to certify this issue for appeal, finding its "resolution" not "reasonably debatable."

fundamentally unfair." *Ford*, 999 F.3d at 1225 (quoting *Deck v. Jenkins*, 814 F.3d 954, 985 (9th Cir. 2016)).

The bar for such claims is high. In *Darden*, the Supreme Court rejected a due process challenge where the prosecutor referred to the defendant as an "animal," mentioned the death penalty in a guilt-phase proceeding, and made numerous, outrageous remarks about the defendant, including that "[h]e shouldn't be out of his cell unless he has a leash on"; that "I wish [the victim] had [] a shotgun in his hand . . . and [had] blown [the defendant's] face off"; that "I wish that I could see him sitting here with no face, blown away by a shotgun"; that "I wish he had used [the gun] on himself"; and that "I wish he had been killed in the accident." 477 U.S. at 179–81 & nn.9–12. The Court weighed these "undoubtedly [] improper" statements against the "heavy" evidence of guilt and the trial court's admonitions that the "arguments of counsel were not evidence." *Id.* at 180, 182. It also considered that the prosecutor did not "manipulate or misstate the evidence," nor did his remarks "implicate other specific rights" like the right to counsel. *Id.* at 182. And it concluded that while the defendant's "trial was not perfect—few are," "neither was it fundamentally unfair." *Id.* at 183.

In support of his *Darden* claim, Severson challenges much of the same prosecutorial conduct that he invokes in support of his *Strickland* claim (though not the expert-vouching comment). He adds that the prosecutor inflamed the jury's

passions by stating that "Mary . . . speaks to us from her grave as to who killed her and why she died," and that the prosecutor violated his right to remain silent under *Griffin v. California*, 380 U.S. 609 (1965), by stating that "[n]obody knows, *that has testified*, what happened between [Mary and Severson]." The Idaho Supreme Court concluded that none of these comments rose to the level of prosecutorial misconduct, and that the alleged *Griffin* violation was too "ambiguous" and "isolated" to deprive Severson of a fair trial. *Severson I*, 215 P.3d at 439–40. Concluding that Severson failed to show at least two improper statements, the *Severson I* court did not analyze the statements' cumulative impact on the verdict. *See id.* at 443. Assuming without deciding that all the misconduct alleged is actionable, and thus analyzing the potential cumulative prejudice issue de novo, *Pirtle*, 313 F.3d at 1167,[4] we see no "reasonable probability" that the prosecutor's actions "rendered the trial fundamentally unfair." *Ford*, 999 F.3d at 1225 (quoting *Deck*, 814 F.3d at 985).

The extensive and outrageous misconduct held insufficient in *Darden* is considerably worse than the prosecutor's comments here. *See* 477 U.S. at 179–81 & nn.9–12. Given the strength of the evidence against Severson and the trial court's jury instructions, the prosecutor's remarks have not shaken our "confidence" in the jury's guilty verdict. *Kyles*, 514 U.S. at 434; *see also Michaels v. Davis*, 51 F.4th

---

[4] As with Severson's *Strickland* claim, we assume for the sake of argument that the "cumulative error" doctrine is "clearly established" for *Darden* claims.

904, 952–54 (9th Cir. 2022) (rejecting *Darden* claim where prosecutor accused defendant of "devil worship," called him "evil" and a "beast," "monster," "psychopath," "professional" and "contract killer," and asked jurors to step into the victim's shoes). This conclusion holds firm even acknowledging that the evidence of guilt in *Darden* was stronger than it is here, and that the jury in this case deliberated for two days before returning a verdict. This conclusion likewise holds firm despite Severson's allegation that the prosecutor violated his rights under *Griffin*—a point of distinction between this case and *Darden*. *See Hovey v. Avers*, 458 F.3d 892, 912 (9th Cir. 2006) (holding "isolated" *Griffin* violation harmless where "minimal in comparison" with evidence of guilt). Even so, given the voluminous evidence of Severson's guilt, we cannot say that the prosecutor's handful of inappropriate remarks, buried in 166 pages of closing arguments, "so infected" the 17-day trial "with unfairness" as to deny Severson due process. *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

\* \* \*

The magistrate judge's order denying Severson's petition for a writ of habeas corpus is therefore **AFFIRMED.**